**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARION B.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No. CV 22-9392-RAO

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Marion B.[1] ("Plaintiff") challenges the Commissioner's denial of disability insurance benefits ("SSDI") and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is **REVERSED**.

## II. SUMMARY OF PROCEEDINGS

On January 8, 2020, Plaintiff filed an application for SSI, alleging disability beginning June 10, 2019. (AR 177). On January 10, 2020, Plaintiff filed an

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

application for SSDI.[2] (AR 183). Plaintiff's applications were denied upon reconsideration on March 4, 2021. (AR 130). On April 9, 2021, Plaintiff filed a written request for a hearing. (AR 136). On December 2, 2021, a telephonic hearing was held on the Commissioner's denial of Plaintiff's application at which an impartial vocational expert testified. (AR 31-53). On March 29, 2022, the ALJ denied Plaintiff's claim for benefits because he was not disabled within the meaning of 42 U.S.C. § 1614(a)(3)(A). (AR 12-26). On November 23, 2022, Plaintiff's appeal was denied. (AR 1). On December 28, 2022, Plaintiff filed this action. (Dkt. No. 1).

The ALJ analyzed whether Plaintiff was disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" or combination of impairments lasting twelve or more months. *Id.*

Pursuant to 20 C.F.R. §§ 404.1520(a) and 416.920(a), the ALJ followed the familiar five-step sequential analysis for determining whether an individual is disabled within the meaning of the Social Security Act. At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2019, the alleged onset date. (AR 18). At **step two**, Plaintiff had multiple severe impairments, including obesity, diabetes mellitus with neuropathy, a cervical post fusion, and a left knee tear. (*Id.*) At **step three**, Plaintiff's combined impairments did not equal the severity of impairments listed in 20 C.F.R. §§ 404.1520 (d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 18). The ALJ determined that Plaintiff possessed the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except occasionally climbing ladders,

[2] Plaintiff filed earlier applications for SSI and SSDI on November 27, 2019, and December 27, 2019, respectively. (AR 161-76). This Order addresses the applications as they were resubmitted in January 2020. Both were rejected on December 3, 2020. (AR 121).

ropes, and scaffolds; all postural are frequent; occasional overhead reaching with left upper extremity, which is non-dominant; and frequent handling with the left upper extremity, which is non-dominant. (AR 19). At **step four**, Plaintiff can perform past relevant work as a manager at the trailer park as actually performed and as security as generally and actually performed, neither of which requires work-related activities precluded by her RFC. (AR 25). Accordingly, the ALJ concluded that Plaintiff has not been under a disability from June 10, 2019, through the date of the ALJ's decision. (*Id.*)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they, when applied against proper legal standards, are supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is shown "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v.*

*Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to properly consider Plaintiff's need for an assistive device and also failed to properly consider her symptom testimony. (Plaintiff's Brief ("PB"), Dkt. No. 11; Plaintiff's Reply Brief ("Reply"). The Commissioner disagrees. (Response Brief ("RB"), Dkt. No. 16.)

### A. Applicable Law

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Once satisfied, the ALJ must examine the entire case record, which includes the claimant's own testimony, for evidence on the claimant's intensity, persistence, and limiting effects of claimant's symptoms. In evaluating the claimant's credibility, a court may consider a multitude of factors, such as inconsistencies between the claimant's statements, objective medical evidence, the claimant's daily activities, the claimant's work record, and statements from healthcare providers or third parties

about the nature, severity, and effect of the symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). However, a lack of objective medical evidence substantiating the claimant's statements about symptoms by itself is not grounds for discrediting the claimant's symptom testimony. (*Id.*). Additionally, the ALJ must take care not to pick and choose only that evidence that bolsters the ALJ's findings. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2011); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). If the ALJ discounts the claimant's testimony for lack of credibility, the ALJ must provide specific, clear, and convincing reasons for doing so. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

**B. Analysis**

**1. Step 1: Underlying Impairment Reasonably Expected to Produce Symptoms**

Plaintiff must present objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036.

Here, Plaintiff presented objective medical evidence of an underlying impairment because medical evaluations list her as having severe diabetes mellitus, peripheral neuropathy, myalgia, and morbid obesity. (*See, e.g.*, AR 60, 75, 91, 1083). Because this condition is satisfied, the Court proceeds with step 2 of the analysis.

**2. Step 2: Evaluating Plaintiff's Subjective Symptom Testimony Against the Entire Record**

In deciding whether to discount Plaintiff's subjective symptom testimony, a court may weigh inconsistencies between her statements, objective medical evidence, her daily activities, work record, and statements from healthcare providers or third parties about the nature, severity, and effect of the symptoms. *Thomas*, 278 F.3d at 958-59. "When rejecting an examining or treating doctor's opinion as unsupported or inconsistent under the new regulations, an ALJ must still provide an explanation supported by substantial evidence." *Pacheco v. Kijakazi*, No. 22-00190, 2023 WL

4670103, at *5 (E.D. Cal. July 20, 2023). An ALJ's decision must be upheld despite its ambiguity "if the agency's path may be reasonably discerned." *Id.*

a. Plaintiff's Testimony About Her Need for a Walker

The ALJ referenced various healthcare providers' medical records noting Plaintiff's pre-existing prescription for a walker. (AR 23- 25). The ALJ noted that the medical records from June 11, July 29, and September 13, 2021, show

> a walker was prophylactically prescribed to 'prevent falls due to a recent fall and knee tear, advised to use a walker when ambulating to prevent falls until further evaluation could be made.' The use of a walker was not a permanent recommendation but rather 'until further evaluation could be made' (Ex. 11F/8). Of note, there is no documentation the claimant required the use of an assistive device for a continuous period of 12 months (Ex. 11F-13F)."

(AR 25).

There is enough evidence on both sides to show that Plaintiff may or may not need a walker. Plaintiff had right knee arthroscopic surgery on February 25, 2019, and has since experienced clicking and pain. (AR 289-309). In October and December 2020, Plaintiff underwent consultative medical examinations, neither for which she used an assistive device for ambulation (AR 22, 23). Cheyenne Upton, PA-C, treated Plaintiff on June 11, 2021, and noted she should "use [a] walker when ambulating to prevent falls until further evaluation can be made." (AR 1085). Julia Rahmann, PA-C, treated Plaintiff on July 7, 2021, and concurred she should "[c]ontinue to use [a] walker when ambulating to prevent falls." Dr. Rahmann also referred her for MRIs of her lumbar spine and bilateral knees because of her "weak legs and burning/numbness sensation" that causes "frequent falls." (AR 1082-83). On July 10, 2021, Plaintiff visited the Lakewood Regional Medical Center and medical records indicate she was not using an ambulatory aid. (AR 1067). On July 26, 2021, Plaintiff presented to the emergency room for "persistent and moderate bilateral leg swelling and weakness," but "ambulated without assistance of a cane or walker." (AR 23). On July 29, 2021, Dr. Upton noted Plaintiff had a normal gait,

but still instructed her to use her "pre-existing prescription for assistive ambulatory device . . . to prevent future falls." (AR 1080-81). On September 13, 2021, Dr. Upton again noticed Plaintiff had a normal gait but instructed her to use an "assistive ambulatory device . . . to prevent future falls." (AR 1079). At the administrative hearing, Plaintiff testified she uses the walker around the house and that she thinks she would need the walker at an office job. (AR 38).

While it may be reasonable and supported by substantial evidence that Plaintiff does *not* need a walker for ambulatory assistance, the ALJ here erred by not detailing how she came to that conclusion. If the ALJ did consider Plaintiff's testimony about using a walker to ambulate around her home and found it not credible, which it appears the ALJ, she needed to have "provide[d] specific, clear, and convincing reasons for doing so," which she did not. *Brown-Hunter*, 806 F.3d at 488-89. The ALJ merely restated the fact of a pre-existing condition for a walker and made no mention of Plaintiff's testimony about needing a walker.

b. Plaintiff's Subjective Symptom Testimony

The ALJ found the assessments of Drs. Rule, Subin, and Karamlou "mostly persuasive" because "they are largely consistent with the longitudinal record" that documents a multitude of Plaintiff's ailments, including "right knee tenderness with mildly decreased flexion; . . . peripheral neuropathy; . . . chronic denervation at multiple levels L4, L5, S1." (AR 24). Dr. Rule noted Plaintiff has diabetes mellitus and peripheral neuropathy; she has some balance issues because of her peripheral neuropathy; tenderness in her right knee and a decreased range of motion, among other symptoms. (*See, e.g.*, AR 59, 60). Dr. Rule found Plaintiff's statement of her symptoms partially consistent with the total medical and non-medical evidence on file. (AR 61). Dr. Subin largely concurred with Dr. Rule's evaluation. (*See, e.g.*, AR 83-98). Dr. Karamlou noted Plaintiff has exogenous obesity. (AR 647). Although she "needs no assistive devices for ambulation," she "has some balance issue[s] in view of the peripheral neuropathy." (*Id.*) Dr. Karamlou also noted

Plaintiff has multilevel degenerative disc disease of the lumbar spine. (AR 653).

The ALJ must take care not to pick and choose only that evidence that bolsters her findings. *Holohan v. Massanari*, 246 F.3d at 1208. Here, the ALJ seemed to analyze only evidence that bolsters her findings:

> In October 2020, at the request of the Disability Determination Service, the claimant underwent a consultative internal medicine examination with A. Karamlou, M.D.. whose impressions included history of DM, currently receiving Glipizide; hyperlipidemia, receiving Atorvastatin herniated disc of the cervical spine, multi-level, status post cervical fusion in 2016, radiculopathy to the left shoulder; craniotomy to relieve pressure due to questionable herniation of the cerebellum with increased intracranial pressure; and peripheral neuropathy of unknown etiology. Dr. Karamlou assessed the claimant had the ability to lift/carry 10 pounds frequently and 20 pounds occasionally; stand and walk for 6 hours in 8-hour day; sit for 6 hours in 8-hour day; frequently push/pull; frequently balance, stoop, kneel, and crouch; should not climb ladders or work at heights. The claimant was noted to have a poor hand grip on the left hand as a result of radiculopathy related to the cervical spine (Ex. 5F).
>
> . . .
>
> In December 2020, J. Rule, M.D., the State Agency medical consultant, and in March 2021, D. Subin, M.D., the State Agency medical consultant, assessed the claimant had the ability to lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb ladders/ropes/scaffolds; and frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.

(AR 23). The ALJ recited those opinions that could support her conclusion, but failed to mention the opinions that might contradict it. For example, provider Elizabeth Booles, FNP-C noted Plaintiff has hyperlipidemia, diabetes II, paresthesia of the skin, myalgia of an unspecified site, and morbid obesity. (AR 1086-87). On June 11, 2021, Dr. Upton noted Plaintiff has myalgia, unspecified site; paresthesia of the skin; Diabetes II; and morbid obesity. (AR 1084-85). Dr. Upton recommended she use a walker when moving around to prevent falls until a further evaluation could be made. (*Id.*) On July 29, 2021, Dr. Upton noted Plaintiff has lower extremity instability with

frequent falling, a tear in the posterior horn of her medial meniscus in her left knee, and tricompartmental chondromalacia and horizontal tear of the lateral meniscus in her right; lower back pain; and tingling to the right lower extremity. (AR 1080; *see* AR 1082). On September 13, 2021, Dr. Upton noted Plaintiff has a pre-existing prescription for an assistive ambulatory device and "is to use this to prevent future falls." (AR 1079). The ALJ may reject treating physicians' opinions, but must explain why. *Christopher K. v. Comm'r, Soc. Sec. Admin.*, __ F. Supp. 3d __, 2023 WL 34445, at *5 (D. Or. Jan. 3, 2023).

If the ALJ accepts the physicians' opinions, then she must consider Plaintiff's subjective symptom testimony. *Id.* at *2. At the ALJ hearing, Plaintiff testified it is hard for her to walk because her legs give out from underneath her and she falls quite often; she experiences severe migraine headaches; her hands go numb, which causes her to drop things; she can't stand, sit, or lay for long periods of time because "the pain is that bad"; and it hurts to stand so much that when she stands for long periods of time, her legs give out from underneath her. (AR 37). She needs to use the walker to get around her house, though she can leave the house without it. (AR 38). If she were working at an office job, she believes she would need to use a walker. (*Id.*) If she were to be working, she could only sit for an hour, maybe an hour and ten minutes, before she would need to lay down for one-and-a-half to two hours on her right side to ease the pain in her back. (AR 40-41). Her headaches occur once or twice a week for up to two to three hours and feel as though she is being hit in the back of a head with a hammer. (AR 42). She takes prescription medicine to alleviate the pain, but the pain is so severe it causes her to bend down. (AR 43).

She has trouble with her hands because they will tingle and go numb, causing her to drop whatever she is holding. (AR 44). Her hands lose feeling at least four to five times per week. (*Id.*) She experiences the same numbness and weakness in her legs, which has caused her to fall down. (AR 44-45).

Plaintiff testified that she "really can't do much because it takes [her] almost a

whole day just to do a little bit around [her] house because [her] legs give out and [she's] tired." (AR 45). She could leave her house, get in her car, drive to the market and buy some groceries, pay for them, drive back home, and prepare food for herself, but only in short periods; she rode around "in one of the carts" when at the store. (AR 45-46). Her daily activities including sweeping and mopping her floor and preparing her meal. (AR 46). She stands and walks for about three hours, sits for about four, and lays down for two to three. (AR 46-47).

To the extent the ALJ rejects this testimony, she must "provide specific, clear, and convincing reasons." *Christopher K.*, 2023 WL 34445, at *3. It is not enough to "simply recit[e] the medical evidence in support of his or her residual functional capacity determination," which is what the ALJ did here.[3] *Id.*

**C. <u>Remand for Further Administrative Proceedings</u>**

Plaintiff contends that the ALJ's decision should be reversed and the matter remanded for further proceedings. (PB at 11.)

The Court finds that remand for further administrative proceedings is appropriate, as further administrative review could remedy the ALJ's errors. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).[4] On remand, the ALJ shall reassess

---

[3] Because the Court finds that reversal is warranted with respect to the ALJ's consideration of Plaintiff's symptom testimony, it does not reach Plaintiff's second claim regarding Plaintiff's need for an assistive device.

[4] Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Plaintiff's symptom testimony. The ALJ shall then proceed through step four and step five to determine what work, if any, Plaintiff is capable of performing. This order does not preclude the ALJ from considering, on remand, any other arguments raised by Plaintiff.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered **REVERSING** the decision of the Commissioner denying Plaintiff's SSI and SSDI requests, and **REMANDING** the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 29, 2023

Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**